HawkiNS, J.,
delivered the opinion of the Court, adopting the opinion of Judge Aroh. Wright, one of the Judges of this Court, who had this case under an advisory.
The writ of error is prosecuted to reverse the judgment in two actions, instituted by Philemon W. Bibb, Sarah H. Anderson, and Susan C. Webb, on the 30th of April, 1859 — the one against Josiah G-. Brown, and the other against Ellen D. Hough. The form of both actions is debt, with the indebitatus assumpsit and quantum vale bat counts — the former for the price of a slave, Eliza Jane, averred to have been sold and delivered to Brown; and the latter for the price of a slave, Lettie, alleged to have been sold and delivered to Ellen D.. Hough. The proof does not show' an actual sale, but it is claimed the suits are maintained upon the principle decided by the Court, in Alsbrook vs. Hathaway, Executor, 3 Sneed, 454, namely: that -where the property of another is taken and converted, the tort may be waived;, and an action of debt supported for its value.
The actions being consolidated, were heard by the Circuit Court, upon an agreed case, from which the following facts appeared:
*436 In February, 1813, John Bibb, a citizen and resident of Virginia, "died intestate, leaving his widow, Susannah Bibb, and three children, who are the defendants in error; the said Philemon W., then being ten years of age; Sárah H., seven; and Susan 0., three years of age; his only heirs and distributees, and all of whom resided in Virginia. At his death, the said John Bibb was the owner, among other slaves, of the negro named Lettie, and a negro girl named Ann. No administration was ever had upon his estate in Virginia, or elsewhere, and there was never an allotment of dower to the widow, either of land or slaves. '
In November, 1817, the widow, with her three children above named, removed from Virginia to Kentucky, carrying with them the negroes, Lettie and Ann. In 1836, the widow sold, in Kentucky, the negro, Lettie, to one Joseph H. Hough, of Nashville, Tennessee, by bill of sale, which was duly registered, conveying to him the entire slave, absolutely; and the said Hough thereupon carried said negro to Nashville with him, where she is at present, and claimed her, adversely to everybody, up to his death, which was in 1844; and by his Will, bequeathed said negro to the plaintiff in error, Ellen D. Hough, who, in like manner, has held and claimed her ever since, adversely. In April, 1852, the widow sold, in Tennessee, by bill of sale, which was duly registered, the negro, Eliza Jane, child of negro woman, Ann, to the other plaintiff in error, Joseph Gf. Brown, conveying the entire slave, absolutely; and he has held adversely to everybody since. The sales to said Hough and Brown, as to them, were made bona *437 fide, and for a valuable consideration, and without knowledge, on their part, of the claim or interest of defendants in error.
In 1824, the said Sarah H., married Thomas Anderson, who died in 1840, leaving her his widow, and she has remained unmarried up to this time. In 1829, the said Susan C., married Calvin W. Webb, the latter of whom died just before the institution of these suits. In 1855, about the last of April, or the first of May, the widow, Susannah Bibb, departed this life, in Kentucky.
The Circuit Judge was of opinion, that the claim of the plaintiffs below, as to the two-thirds of the value of the slaves in controversy, was barred by the Statute of limitations; but as to the remaining one-third, (in which he held the widow had a life estate,) they were entitled to recover. Erom the judgment given in pursuance of this opinion, the defendants below appealed to this Court.
By the law of Virginia in 1813, and always, as at common law, upon a decedent’s death, the legal title to his personal estate, (and slaves.have been personalty there since 1792,) devolved upon his executor or administrator in trust: first, to pay his debts, and after-wards, to distribute to legatees and distributees. If the decedent died intestate, the legal title is in abeyance until an administrator is appointed; and no one, not even a distributee, can rightfully take possession of the estate.
The widow is one of the distributees of an intestate, taking, after the payment of debts, one-third of the sur *438 plus, when there are children, hut she shall have no more than the use for her life of such slaves as shall be in her share; and this has been the provisions of the Virginia law since 1'792. Her share in the slaves, whether designated by the term u dower,” or other phrase, partakes of the nature of personalty, and is to be administered and distributed upon principles applicable to that species of estate. Ho particular allotment of the widow's share of the personalty seems requisite, as in case of dower. She cannot, indeed, rightfully appropriate it, without the assent of the personal representatives of decedent, but that assent may be proved by implication, as well as directly; and if it be unreasonably withheld, the recourse of the widow, like that of any other distributee, is to a court of equity.
Keeping in view the foregoing principles — which, from such knowledge as we have been able to obtain, we believe to be a correct statement of the Virginia law — we apprehend the complexion of the present case is determined by the common law.
The widow, having no right to the possession of the slaves, over her one-third part, in the absence of any grant of administration, was, we take it, an executor de son tort; and her alienees would be equally wrongdoers, and in no better condition. But, having the possession, they can hold it against any person, save a creditor, or administrator of the decedent — being liable to the first, as an executor de son tort, and to the second, because he is the representative of the deceased, upon whom the law casts his right to the personal estate, to be held by him for the payment of debts, and *439 for distribution among tbe nest of bin of tbe intestate. Tbe defendants in error, as distributees, stand in neither of these relations; and, therefore, cannot sue for tbe personal property of tbe intestate, nor demand a distribution of it from any person, save tbe administrator of bis estate; and he has never been appointed. This rule applies alike to suits at law and in equity, as no Court, through its instrumentality, can allow parties to recover property, when they would themselves thereby become executors de son tort, which implies- a wrongful interference with the property of the intestate: Thurman vs. Shelton, 10 Ter., 385; G-oode vs. Goode, 2 Murph., 335-6; Humphreys vs. Humphreys, 3 Williams, 349.
We do not perceive how the force of this common law rule, (and which prevails equally in Tennessee and Virginia,) is, in this case, obviated by our Act of 1827, ch. 61. This Court, in the construction of this Statute, has held, that since its passage, slaves in Tennessee do not, like other personal estate, vest in the personal representatives, but descend to the dis-tributees, like lands to the heir, subject to the claim of creditors. But at the common law, neither legatees nor distributees acquire any property in the goods of the deceased, until the assent of the executor or administrator, is given. They , only have . an inchoate' right to the surplus, after the payment of the debts. It is only a right of action, the property still remaining in the executor or administrator: Sneed and Wife vs. Hooper and Wife, Cooks’ Rep., 200-204. If a legatee take possession of the thing devised, or the distributee of his distributive share, without the as *440 sent of tlie executor or administrator, as the case maybe, the latter may have an action of trespass against him: 3 Bac. Ab., '520. This was the law of both Virginia and Tennessee, at the time of the decedent’s death, and is yet so, except in the latter State, as to shares, more than thirteen years after the intestate’s death — the rule not changed by the above Statute— anterior to which, it was held by our predecessors, that an executor or administrator might sell, give away, or dispose of, as he thought proper, the slaves of the decedents, if there be. no collusion: Coot, 200. As before stated, the residence of the decedent and 0£ his distributees, as well as the slaves, was in Virginia, at his death — when the rights of parties become fixed; and we do not suppose that this Act of Assembly was intended to have any application to a case like the present. It does not so purport; and without discussing the power of the Legislature to have given this Act a retrovertive effect upon the facts before us, or to legislate touching property and persons abroad, as were there, it is sufficient to say that it bears no such construction: Dash vs. Vankleech, 7 Johns. 478; Smith vs. Brady, 7 Ter., 447-450.
It may be that it is now too late to obtain a grant of administration, (the intestate having been dead over thirty years,) so as to afford the parties a remedy, if, indeed, there could be any, after such delay; but to this we cannot loot: Acts, 1831, ch. 24, sec. 3; 1835, ch. 86, sec. 3; Code, sec. 2220; 1 Hill’s, Ch. Rep., 376-382.
If it appeared that administration had been granted *441 on^this estate, or, upon search, that no evidence of the grant could he found, or the record was silent as to the fact, and as to whether the widow’s share had been assigned her — then her long-continued possession, after a ieasonable time for the payment of debts, and her use of the slaves as her own, migtít, perhaps, under the circumstances of this case, justify the supposition she held them, as distributee, for her life, the reversion being in her children, to be enjoyed at her death. Administration, and the assent of the personal representatives to the possession of the widow, or whatever else was requisite to make her holding lawful, might be presumed: Riddlehoover et al. vs. Kinard, Administrator, et al., 1 Hill’s Ch. —, 376. But here it is expressly stated in the agreed case, that no administration was ever had, and that the widow’s part had never been allotted her; thus destroying all room for presumption, and showing that the possession of the widow could not, originally, have been otherwise than as a wrong-doer. It is not stated that her possession was continued from the intestate’s death, to the sales before recited; but, perhaps, this is fairly to be inferred from the agreement of facts; nor is it shown that the children held possession with her; but were it reasonable to believe they resided in the family until they came of age, or married and then left, it is not perceived how this could aid them. It would be unsafe to disturb possession so long continued as those of the plaintiffs in error, and that of their vendor, unless it were shown that the widow here has only a life estate, subject to a reversion. But this is not done. How are we to know that *442 the claim now set up has not been extinguished ? The long and continued possession and use of the property, with the silence and acquiescence of defendants in error, furnish evidence that this is so. Who . got the other slaves and property of the estate — the children of the widow ? What are the equities between them ?
If, on the other hand, there was any analogy between the share of a widow in the slaves, and her dower in real estate, (and we think there is none,) still, we understand the law of Virginia, as well as the common law, to be, that until her dower was assigned her, she had no title to the possession of any part of the land; and hence, that her possession, or that of her alienee, as against the heir, was tortious, and gave an instantaneous cause of suit. The only modification of this doctrine in the Virginia Statutes, is, as to the mansion house of the husband, and the messuage or plan, taken thereto belonging; in which the widow was authorized, to remain until her dower in her husband’s lands should be assigned to her; and it is to this Statute, that Chancellor Kent refers, in the 4th volume of his Commentaries, 62, 2d ed. The common law, in other respects, is unchanged: Chapman vs. Armstead, 4 Murp., 382-398; Moore vs. Gilliam, 5 Murp., 346-348.
The result is, the judgment of the Circuit Court must be reversed, and judgment given for the defendants below, upon the agreed case.
The foregoing opinion is adopted as the opinion of this Court.